IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| V&S RAILWAY, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 08-1402 WEB |
| HUTCHINSON SALT COMPANY, INC., | ) | |
| HUTCHINSON TRANSPORTATION COMPANY, INC., and | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

This action comes before the Court on Plaintiff's Motion to Stay the Case and Refer Certain Issues to the Surface Transportation Board (Doc. 88). Defendants have filed a Response (Doc. 114), and Plaintiff filed a Reply (Doc. 140). The matter is fully briefed and ripe for ruling.

Summary of Claims

Plaintiff's motion states that the current action involves a dispute concerning the ownership of certain parcels of land and the improvements in Hutchinson, Kansas, which comprise part of the right-of-way of a line of railroad which was acquired and is being

1

operated in interstate commerce by Plaintiff V&S ("V&S"), pursuant to the authorization of the Surface Transportation Board (the "Board"). Plaintiff claims that some of the issues in the case fall within the exclusive jurisdiction of the Board. Plaintiff asserts that the issue of whether V&S is the only rail carrier that has the right to operate on the line of railroad that it acquired and is operating pursuant to the Board's authorization and to interchange traffic with Defendant BNSF Railway Company ("BNSF") is within the exclusive jurisdiction of the Board. Plaintiff also contends that another issue within the exclusive jurisdiction of the Board is the issue of whether Defendants Hutchinson Salt Company, Inc. ("HSC") and/or Hutchinson Transportation Company, Inc. ("HTC") can operate their trains on the line of railroad acquired and operated by V&S and to interchange traffic with BNSF by virtue of their claimed ownership of certain parcels of land and the improvements thereon that comprise part of the right-of-way of V&S's line of railroad. Finally, Plaintiff asserts that the Board is vested with exclusive jurisdiction to determine whether a railroad has abandoned a right-of-way. Plaintiff's motion asks that these issues be referred to the Board and that the case be stayed pending decision by the Board.

Defendants have filed a joint response to Plaintiff's Motion to Stay arguing that there is no dispute regarding the ownership of any of the parcels of land. Defendants point to paragraphs 16 and 17 of the Complaint in saying that all the land that is the subject of this litigation is owned by HSC and HTC. Defendants further assert that Plaintiff's Complaint is more accurately a claim to be successor in interest to an easement

2

over some of Defendants' land. *See* Complaint, ¶¶11-14, 18-20. Defendants recognize that Plaintiff has made a claim of ownership to the improvements on Defendants' land. Defendants assert that the claims set forth in the Complaint, including Quiet Title to Right of Way Easement on Parcel 1, Adverse Possession for Right of Way Easement on Parcel 10, Ejectment, Trespass, Slander to Title, Quiet Title to Personal Property, Unjust Enrichment, and Easement by Necessity, are all claims routinely handled by state or federal courts and are not appropriate for referral to an outside agency. Instead, Defendants state that this case involves issues that need to be decided by a finder of fact applying Kansas law.

Facts

Plaintiff asserts that it is the current owner and operator of a line of railroad in Hutchinson, Kansas. The disputed segments of the right-of-way underlying the line of railroad have been referred to in this case as Parcel 1 and Parcel 10. Plaintiff contends that HSC and/or HTC own the fee interest in Parcel 1 and Parcel 10, and V&S claims a railroad right-of-way on Parcel 1 and Parcel 10. V&S further claims that its right to operate the railroad is exclusive and cannot be interfered with by Defendants. (Complaint [Doc. 1] ¶¶ 25, 28, 31, 37, & 38).

Defendants HSC and HTC claim that V&S does not have any rights to Parcel 1, Parcel 10, and the railroad materials thereon or, alternatively, that their rights to Parcel 1, Parcel 10, and the railroad materials are superior to V&S' rights. (HSC's and HTC's Answer and Counterclaim [Doc. 14] ¶¶ 16, 19, 25, & 35; and *see* page 2 of the May 25,

3

2007 letter from HSC's counsel to V&S, that provides, in part, that V&S merely has a joint right to use the railroad track at issue).

HSC and HTC further claim that V&S' claimed interest in Parcel 1 was abandoned by V&S' predecessor-in-interest, the Hutchinson and Northern Railway Company. (HSC's and HTC's Answer and Counterclaim [Doc. 14] ¶¶ 15, 35.)

Discussion

Rail carriers are subject to the jurisdiction of the Surface Transportation Board (the "Board"), the agency that succeeded the Interstate Commerce Commission to administer the economic regulation of the Nation's railroads. *See* ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803.

A rail carrier within the meaning of the ICC Termination Act (the "Act") is "a person providing common carrier railroad transportation for compensation … " 49 U.S.C. § 10102(5).

Where an entity handles only its own goods and does not offer for hire transportation to anyone, those operations constitute "private carriage – operations beyond the scope of the Board's jurisdiction." *S.D. Warren Company*, STB Finance Docket No. 34133, 2002 WL 31160840 (served Sept. 30, 2002).

The Board lacks jurisdiction over contracts dealing with private carriage. *See Chevron U.S.A., Inc. – Lease and Operation Exemption – Richmond Belt Ry*, STB Finance Docket No. 32352, 1995 WL 348739 (May 25, 1995) (no ICC jurisdiction to approve lease "where trackage rights are acquired for switching purposes only").

> The Agency's jurisdiction . . . does not extend to wholly private rail operations conducted over private track, even when such operations are conducted by an operator that conducts common carrier operations elsewhere, if it operates on the private track exclusively to serve the owner of the track pursuant to a contractual arrangement with that owner. Private track is typically built by a shipper (or its contractors) to serve only that shipper, moving the shipper's own goods, so that there is no "holding out" to serve the public at large.

*Devens Recycling Center*, STB Finance Docket 34952, 2007 WL 61948 (internal citations omitted).

"'The fundamental test for determining whether a party is a common carrier is whether there has been a holding out to the public as a common carrier . . . .'" *Santa Clara Valley Transp. Auth.—Acquisition Exemption-Union Pac. R.R. Co.*, STB Finance Docket No. 34094, 2001 STB LEXIS 868, at *7 (served Nov. 16, 2001) (citing *Status of Bush Universal, Inc.*, 342 I.C.C. 550, 564 (1973)).

Defendants assert that since they are not rail carriers, the Board does not have jurisdiction over them. *See,* Doc. 114, p. 9. They further argue that to the extent that V&S, as successor in interest to H&N which provided a switching service, has traveled over the subject track in the past, it has been exclusively for the purpose of serving Defendants on a contractual basis. *Id.*

However, there is no dispute that V&S is a common-carrier railroad or that the Board has regulatory jurisdiction over V&S. Moreover, the Board considers the railroad line at issue to include the portion of the track in dispute that is located on Parcels 1 and 10, which are located between mileposts 0.0 and 0.5. *V& S Railway LLC—Acquisition*

5

*and Operation Exemption—The Hutchinson and Northern Railway Company*, STB Finance Docket No. 34875, 71 Fed. Reg. 30978 (served May 31, 2006); V&S's Memorandum in Support of Motion to Stay (Doc. 89) at 3.

The Board's jurisdiction is exclusive and plenary. In *Seaboard Air Line Railroad Co v. Daniel*, 333 U.S. 118, 125 (1948), the Supreme Court emphasized that "Congress granted the Commission 'exclusive and plenary' authority in refusing or approving railroad consolidations, mergers, acquisitions, etc."

The ICC Termination Act made explicit what the Supreme Court had held to be implicit. The language of 49 U.S.C. § 10501(b) declares:

> The jurisdiction of the Board over --
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, facilities of such carriers . . . . is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

"Section 10501(b) gives the Board exclusive jurisdiction over 'transportation by rail carriers,' and the term 'transportation' is defined by . . . statute, at 49 U.S.C. 10102(9), to embrace all of the equipment, facilities, and services relating to the movement of property by rail." *CSX Transp., Inc. – Pet. for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2 (served May 3, 2005).

The Board's governing statute, 49 U.S.C. § 11323(a), provides that the Board must approve and authorize the "[c]onsolidation or merger of the properties or franchises of at least 2 rail carriers into one corporation for the ownership, management, and operation of

the previously separately owned properties" and "[a]cquisition by a rail carrier of trackage rights over, or joint ownership in or joint use of, a railroad line (and terminals incidental to it) owned or operated by another rail carrier." 49 U.S.C. § 11323(a)(1), (6).

The Board has jurisdiction over transportation by common-carrier railroads and may issue a declaratory order to terminate a controversy or remove uncertainty as to the status of particular track. *Devens Recycling Center, LLC—Pet. for Declaratory Order*, STB Finance Docket No. 34952, 2007 STB LEXIS 8, at *4-5 (served Jan. 10, 2007).

Because the Board has jurisdiction to address the controversy or uncertainty as to the status of a particular track, and because there is a dispute between the parties as to the status of track on Parcels 1 and 10--which the Board considers to be part of the railroad operated by V&S (*V& S Railway LLC—Acquisition and Operation Exemption—The Hutchinson and Northern Railway Company*, STB Finance Docket No. 34875, 71 Fed. Reg. 30978 (served May 31, 2006))--the issue of whether V&S has the exclusive right to operate on the track should be referred to the Board. *See, e.g., City of Creede, Co.—Pet. for Declaratory Order*, STB Finance Doc. No. 34376, 2005 STB LEXIS 486, at *21 (served May 3, 2005) ("Once rail operations have been authorized by the Board, the track remains a line of railroad subject to full agency regulation until the agency authorizes its abandonment."). This case clearly involves allegations that V&S has the exclusive right to operate on the track at issue. Complaint, Doc. 1, ¶ 28 ("V&S is entitled to an order . . . that V&S' rights to operate the Railroad on Parcel 1 include the right to the uninterrupted

and exclusive use of the right of way easement on Parcel 1 . . . ."), ¶31("As a result, V&S is entitled to an order . . . that V&S' rights to operate the Railroad on Parcel 10 include the right to the uninterrupted and exclusive use of the right of way easement on Parcel 10."), ¶37 (uninterrupted and exclusive use of right of way easements on Parcels 1 and 10), and ¶44 (V&S' right to uninterrupted and exclusive use of a right of way easement on Parcel 1).

"The private line exemption provides, in essence, that a 'private line' is not a 'railroad line' as that term is used in sections 10901(a) and 10903(a)." *Hanson Natural Res. Co.-Non-Common Carrier Status-Pet. for Declaratory Order*, Finance Docket No. 32248, 1994 MCC LEXIS 111, at *53 (I.C.C. served Nov. 15, 1994). The Board has previously held that V&S' track, which extends from milepost 0.0 to milepost 5.14 is not a private line, but is the line of a rail carrier. *Citing, V& S Railway LLC—Acquisition and Operation Exemption—The Hutchinson and Northern Railway Company*, STB Finance Docket No. 34875, 71 Fed. Reg. 30978 (served May 31, 2006).

Further, the Board is vested with exclusive and plenary jurisdiction to determine whether a railroad has abandoned a right-of-way. *Chicago & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 320 (1981) (citations omitted); *Moody v. Great W. Rwy.*, 536 F.3d 1158, 1161 (10th Cir. 2008); *Phillips Co. v. Denver & Rio Grande W. R.R. Co.*, 97 F.3d 1375, 1377-78 (10th Cir. 1996) (citing *Kalo Brick*).

While "[s]tate law generally governs the disposition of reversionary interests,"

state law is "subject of course to the [Board's] 'exclusive and plenary' jurisdiction to regulate abandonments." *Preseault v. Interstate Commerce Comm.*, 494 U.S. 1, 8 (1990); *see also Moody v. Great W. Rwy.*, 536 F.3d 1158, 1161 (10th Cir. 2008) (state court could not grant relief to person claiming reversionary interest as a result of abandonment because Congress granted the Board "exclusive jurisdiction to determine whether a railroad has abandoned a right-of-way").

"Prior to discontinuing service and abandoning a railway line, a railroad must obtain authorization from the STB. Such authorization, once granted, is permissive, rather than mandatory. Thus, to consummate an abandonment and trigger reversionary interests, the railroad must take further action manifesting a clear objective intent to abandon." *Wheeler v. Mat'l Recovery of Erie, Inc.*, No. 06-85 Erie, 2009 U.S. Dist LEXIS 82326, at *4 (W.D. Pa. Sept. 10, 2009). Further, in the absence of the Board's authorization allowing a carrier to lawfully abandon service, a court cannot even find that a *de facto* abandonment has occurred. *Phillips Co.—Pet. for Declaratory Order*, Finance Doc. No. 32518, 1995 MCC LEXIS 26, at *14-15 (I.C.C. served Apt. 18, 1995); *Phillips Co. v. Denver & Rio Grande W. R.R. Co.*, 97 F.3d 1375, 1377 (10th Cir. 1996) (deferring to the ICC's interpretation of its governing statutes).

The Court of Appeals of Kansas recently came to the same conclusion. In *Bitner v. Watco Co., Inc.*, ___ Kan. App. 2d ___, No. 101,916, 2010 Kan. App. LEXIS 31, at *2 (Mar. 26, 2010), the appellate court was confronted with a case in which the landowners claimed that the railroads abandoned their interests. None of the parties to the case had

9

filed for an abandonment order with the Surface Transportation Board and no abandonment order had previously issued. *Id.* at *2-3. Looking to both Kansas and federal law, the court found that both federal and state law required entry of an abandonment order before an abandonment of a railroad right of way could be found. *Id.* at *6-7 (citing 49 U.S.C. § 10903(a)(1)(A) and K.S.A. 66-525).

Like in *Bitner*, V&S asserts that there is no evidence that any party to this action, nor any of their predecessors-in-interest, filed an abandonment application with the Board or the ICC. Since an abandonment order is necessary before this Court may find that the portion of the railroad existing on Parcels 1 and 10 are no longer part of the railroad, the Board has the exclusive and plenary jurisdiction to determine whether this prerequisite for finding an abandonment under state law has been met.

In *Far East Conference v. United States*, 342 U.S. 570, 574 (1952), the Supreme Court noted, "[N]ow firmly established [is the principle], that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." In *United States v. Western Pacific RR. Co.*, 352 U.S. 59, 63-64 (1956), the Supreme Court declared that "'[p]rimary jurisdiction[]'. . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body

for its views." *See also S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 756-57 (10th Cir. 2005); *Crystal Clear Comm'cns v. S. Bell*, 415 F.3d 1171, 1176 (10th Cir. 2005); *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996).

The reasons the primary jurisdiction doctrine exists have been summarized by the Tenth Circuit as follows:

> Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies. An issue of primary jurisdiction arises when a litigant asks a court to resolve "[an] issue[] which, under a regulatory scheme, has been placed within the special competence of an administrative body." If the issue is one "that Congress has assigned to a specific agency," the doctrine of primary jurisdiction allows the court to stay the judicial proceedings and direct the parties to seek a decision before the appropriate administrative agency. The agency is then said to have "primary jurisdiction."

*S. Utah Wilderness*, 425 F.3d at 750-51 (internal citations omitted). As recounted by the Tenth Circuit in *Williams Pipe Line*, "[i]n essence, the doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results." 76 F.3d at 1496. The primary jurisdiction doctrine is therefore properly invoked when the reasons for the existence of the doctrine are present and the doctrine's dual purposes—regulatory uniformity and agency expertise—will be aided by its application. *S. Utah Wilderness*, 425 F.3d at 751.

Further, courts routinely stay the proceedings before them to permit the referral of controverted issues within the jurisdiction of the Board for decision by the Board. *See,*

11

*e.g., Victoria Wheeler v. Mat'l Recovery of Erie, Inc.*, No. 06-85 Erie, 2007 U.S. Dist. LEXIS 23573 (W.D. Pa. Mar. 30, 2007) (McLaughlin, J.); *E. W. Resort Transp., LLC v. Sopkin*, 371 F. Supp. 2d 1253, 1265-67 (D. Colo. 2005) (Babcock, J.); 28 U.S.C. § 1336(b) (discusses a district court's jurisdiction when a question or issue is referred to the Board).

Conclusion

The Board has primary jurisdiction over the issue of whether V&S is the only rail carrier that has the right to operate on the line of railroad that it acquired and is operating pursuant to the Board's authorization. The Board also has jurisdiction over whether Defendants can operate their trains on the line of railroad acquired and operated by V&S. The Board has exclusive jurisdiction to determine whether a railroad has abandoned its right-of-way. Accordingly, Plaintiff's motion (Doc. 88) that these issues be referred to the Board shall be GRANTED and the case will be stayed pending decision by the Board.

IT IS THEREFORE ORDERED that the following issues be referred to the Surface Transportation Board for determination:

1. Is V&S the sole rail carrier authorized to operate on the railroad line between Milepost 0.0 and Milepost 5.14 in Hutchinson, Reno County, Kansas, and to interchange traffic with Defendant BNSF Railway Company?

2. Does HSC and/or HTC have the right to operate on the railroad line and to interchange traffic with Defendant BNSF Railway Company by virtue of the fact that they own part of the real property underlying the railroad line and/or the fact that they

claim ownership of some of the tracks and improvements that are part of the railroad line the Board authorized V&S to acquire and operate?

3. Did the Hutchinson & Northern Railway Company or any successor-in-interest abandon the right-of-way on Parcel 1 granted to it by virtue of the 1925 Easement?

IT IS FURTHER ORDERED that all further proceedings in this case be stayed pending a decision by the Board. V&S is directed to promptly file with the Board a Petition for Declaratory Order. V&S is further directed to request expeditious handling of the Petition for Declaratory Order.

IT IS SO ORDERED this 17th day of December, 2010 at Wichita, Kansas.

s/ Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge